**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MEDICAL TRANSCRIPTION BILLING, CORP., <br><br> Plaintiff, <br><br> v. <br><br> DAVID DARDASHTI, DPM, et al., <br><br> Defendants. | Civil Action No. 15-8976 (MAS) (DEA) <br><br> **MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court upon Plaintiff Medical Transcription Billing, Corp.'s ("Plaintiff") Motion to Dismiss Counterclaims. (ECF No. 12.) Defendants David Dardashti, DPM, Foot & Ankle Doctors of Beverly Hills, Inc., Foot & Ankle Doctors, Inc., and Farshid Nejad, DPM (collectively, "Defendants") opposed (ECF No. 17), and Plaintiff replied (ECF No. 18).

The Court, having considered the parties' submissions, decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons stated below, Plaintiff's Motion is DENIED as to Counts One, Three, and Four of Defendants' Counterclaims, and GRANTED as to Count Two of Defendants' Counterclaims.

**I.     Background**

Plaintiff filed a four-count Complaint arising from alleged delinquent invoices Defendants failed to pay Plaintiff in exchange for various healthcare billing and management services. (Compl. ¶¶ 5-30, ECF No. 1-1.) Specifically, Plaintiff alleges breach of contract, breach of the

implied covenant of good faith and fair dealing, unjust enrichment, and quantum meruit. (*Id.* ¶¶ 31-44.)

Plaintiff "provides third-party billing services to medical practices and other healthcare providers," including Defendants. (Countercl. at 20-21, ECF No. 9.)[1] Beginning in November 2013, Defendants separately contracted with Primary Billing Services, Inc. ("PBS") for medical billing and management services (collectively, "Billing Agreements"), and PBS later assigned to Plaintiff its rights and liabilities with regard to these contracts. (*Id.* at 21.) Defendants accordingly continued to utilize the services bargained for in their Billing Agreements with PBS, except receiving the services from Plaintiff instead of PBS beginning in or around July 2014. (*Id.* ¶¶ 3-6.)

Each Billing Agreement contains the following Limitation of Liability Clause:

> The warranties and remedies set forth in this agreement herein are in lieu of all other remedies and warranties, expressed or implied, including without limitation, the warranties [of] merchantability and fitness for a particular purpose[.] [PBS] will not be liable for any damages or expenses incurred by [Defendant][2] in connection with any defect in the service or failure to perform said service by [PBS]. In no event will [PBS] be liable for any incidental or consequential damages including, without limitation, loss of use, loss of profits or claims of third parties, however caused, whether by negligence of [PBS] or otherwise.

(Compl. Exs. A-C, ECF No. 1-1.)[3]

---

[1] The Court cites to page numbers rather than paragraph numbers because the Counterclaims paragraph numbers restart after paragraph five on page twenty-one. As the paragraph numbers continue uninterrupted after page twenty-one, the Court will cite paragraph numbers when referencing portions of the Counterclaims that follow page twenty-one.

[2] Each Billing Agreement identifies a particular Defendant.

[3] The Limitation of Liability Clause is identical among the three Billing Agreements Plaintiff attached to the Complaint. Plaintiff did not attach a billing agreement for Defendant Foot & Ankle Doctors of Beverly Hills, Inc.

2

Defendants allege that after Plaintiff assumed responsibility to perform services under the Billing Agreements, Plaintiff repeatedly failed to perform numerous obligations required by the Billing Agreements. (Countercl. ¶ 8.) On or about June 15, 2015, Defendants notified Plaintiff that they were experiencing "significant decreases in receipts and cash-flow, which coincided with [Plaintiff's] assumption of their accounts from PBS." (*Id.* ¶ 9.) In this June 15, 2015 notification correspondence, Defendants requested certain information and documents from Plaintiff, "so as to facilitate an accounting of all of the [Defendants'] accounts." (*Id.*)

According to Defendants, Plaintiff responded in three days, "obviously having done little, if any, investigation." (*Id.* ¶ 10.) Counsel for Plaintiff allegedly refused to provide the requested data and instead responded by pursuing a "purported account delinquency of $8,147.00." (*Id.* ¶ 11.) Plaintiff remained indifferent to Defendants' continued requests for information, and further accused Defendants of breaching the Billing Agreements by using competing billing services. (*Id.* ¶ 12.)

By correspondence on July 2, 2015, Plaintiff terminated the Billing Agreements, "indicat[ing] that [Plaintiff] would cease all work on the [Defendants'] claim files," and that Defendants would have to pay additional fees to access "*their own patient financial records.*" (*Id.* ¶ 13.) Plaintiff maintained its position despite Defendants' attempts to explain their position. (*Id.* ¶¶ 14-15.) Plaintiff ultimately provided incomplete "Claim Data" to Defendants, which upon forensic analysis revealed an estimate of at least $676,717.65 in damages sustained by Defendants. (*Id.* ¶¶ 16-18.) Defendants, therefore, counterclaimed on four counts arising from Plaintiff's defective service: (1) breach of contract, (2) negligence, (3) breach of covenant of good faith and fair dealing, and (4) promissory estoppel. (*Id.* ¶¶ 19-42.)

## II. Legal Standard

When considering a motion to dismiss for failure to state a claim, a district court conducts a three-part analysis. *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a [counterclaimant] must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court "must accept all of the [counterclaim's] well-pleaded facts as true, but may disregard any legal conclusions." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). Last, once the well-pleaded facts have been identified and the conclusory allegations disregarded, a court must determine whether the "facts alleged . . . are sufficient to show that the [counterclaimant] has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 679). A counterclaim must contain sufficient facts to "put the [counterclaim-]defendant on notice of the nature of the [counterclaim]." *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 320 n.18 (3d Cir. 2010) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 565 n.10 (2007)). "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). It is a counterclaim-defendant's burden to show that no claim has been presented. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005).

## III. Parties' Positions

Plaintiff moves to dismiss Defendants' Counterclaims based on two arguments: the Limitation of Liability Clause bars all of Defendants' Counterclaims; and Defendants' negligence claim arises from contractual obligations, thus failing to sufficiently allege a tort claim. (Pl.'s Moving Br. 4-7, ECF No. 12-1.) As to Plaintiff's first argument, Plaintiff asserts that the Billing

4

Agreements contain clauses that state: "[Plaintiff] will not be liable for any damages or expenses incurred by [Defendants] in connection with any defect in the service or failure to perform said service by [Plaintiff]." (Compl. Exs. A-C; Pl.'s Moving Br. 4-5.) Plaintiff argues that this clause bars Defendants from pursuing their counterclaims because damages is an essential element for each of Defendants' causes of action. (Pl.'s Moving Br. 4-5.) Plaintiff further argues that the Limitation of Liability Clause is enforceable. (*Id.* at 5.) Finally, Plaintiff argues that Defendants cannot pursue punitive damages on contract claims or simple negligence claims, thus leaving Defendants without any viable claim for damages. (*Id.* at 5-6.)

With regard to Plaintiff's second argument, Plaintiff asserts that the negligence counterclaim allegedly arises because "[Plaintiff] owed a duty . . . to perform its financial and professional obligations related to the [Billing] Agreements," and because Plaintiff "breached those obligations (duties) by failing to fulfill its promises in the [Billing] Agreements." (*Id.* at 7 (quoting Countercl. ¶¶ 28-29).) Plaintiff argues that the duty arises purely out of contract and that contract claims cannot be disguised as tort claims under California law. (*Id.*)

Defendants respond to Plaintiff's Limitation of Liability Clause argument by asserting that the clause is unenforceable because: (1) it violates California law; (2) it violates California's public interest; and (3) it is unconscionable. (Defs.' Opp'n Br. 6-20, ECF No. 17.) In response to Plaintiff's argument that negligence claims cannot arise from contractual duties, Defendants contend that their negligence claim arises from an independent fiduciary duty to properly manage Defendants' patient accounts pursuant to New Jersey regulations. (*Id.* at 20-21.) Plaintiff replies and argues that Defendants misapply California law to determine the enforceability of the Limitation of Liability Clause. (Pl.'s Reply Br. 1-9, ECF No. 18.)

5

## IV. Discussion

### A. Limitation of Liability Clause

Here, the Court agrees with Defendants that Counts One, Three, and Four of Defendants' Counterclaims are sufficiently pled. California law governs as the Billing Agreements state that "[a]ll questions concerning validity, operation, interpretation and construction of this Agreement will be governed by and determined in accordance with the laws of the State of California."[4] (Compl. Exs. A-C; Pl.'s Moving Br. 4-5.) Defendants argue that, under California law, the Limitation of Liability Clause violates the public interest and is unconscionable, thus rendering the clause unenforceable. (Defs.' Opp'n Br. 9-20.)

Courts applying California law must consider the following factors when determining whether a contractual provision is unenforceable due to contrary public interest:

> [Whether] [i]t concerns a business of a type generally thought suitable for public regulation[;] [whether] [t]he party seeking exculpation is engaged in performing a service of great importance to the public ... [;] [whether] [t]he party holds himself out as willing to perform this service for any member of the public who seeks it ... [;] [whether,] [a]s a result of the essential nature of the service, in the economic setting of the transaction, the party invoking exculpation possesses a decisive advantage of bargaining strength against any member of the public who seeks his services[;] [whether] [i]n exercising a superior bargaining power the party confronts the public with a standardized adhesion contract of exculpation, and makes no provision whereby a purchaser may pay additional fees and obtain protection against negligence[;] [and whether,] [a]s a result of the transaction, the person or property of the purchaser is placed under the control of the seller, subject to the risk of carelessness by the seller or his agents.

*Tunkl v. Regents of Univ. of Cal.*, 60 Cal. 2d 92, 98-101 (1963).

---

[4] The parties do not dispute that California law governs. Although Plaintiff cites cases from the Third Circuit and the District of New Jersey as examples of how this Circuit and District have previously ruled on similar cases, Plaintiff relies on California cases to make its substantive arguments. (*See* Pl.'s Moving Br. 5-6.)

6

Similarly, to determine whether a contractual provision is unconscionable, California courts examine whether the contract was negotiated between parties with unequal bargaining power ("procedural unconscionability") and whether the terms of the contract are "substantively" unconscionable. *See Shroyer v. New Cingular Wireless Servs., Inc.*, 498 F.3d 976, 981-82 (9th Cir. 2007) (summarizing California law on unconscionability). "California courts apply a 'sliding scale,' so that 'the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.'" *Id.* Generally, where the analysis "focus[es] on the bargaining power of the parties, the conspicuousness of the putative unfair term, and the oppressiveness and unreasonableness of the term," the "inquiry is fact-intensive and therefore more appropriately explored at summary judgment." *G & F Graphic Servs., Inc. v. Graphic Innovators, Inc.*, 18 F. Supp. 3d 583, 594 (D.N.J. 2014) (applying New Jersey's test for unconscionability, which examines similar factors set forth under California law).

Here, in accordance with the general rule, the inquiry into public interest and unconscionability is better suited for summary judgment. Accepting all of Defendants' Counterclaims' allegations as true, the Court finds that Defendants have sufficiently pled a claim that survives dismissal notwithstanding the Limitation of Liability Clause.

Defendants also argue that the Limitation of Liability Clause violates California Civil Code Section 1668, which states: "All contracts which have for their object, directly or indirectly, to exempt any one from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law." According to Defendants, the Limitation of Liability Clause violates Section 1668 because it precludes recovery for conduct that violates New Jersey regulations for third-party billing

companies. (Defs.' Opp'n Br. 6-7.) The Court, however, need not reach this issue, as Defendants have already established that they sufficiently pled Counts One, Three, and Four to survive Plaintiff's Motion to Dismiss. The Court therefore denies Plaintiff's Motion to Dismiss as to Counts One, Three, and Four of Defendants' Counterclaims.

## B. Negligence Claim

On the other hand, with regard to Plaintiff's argument that Defendants fail to state a negligence claim, the Court agrees. Under California law,[5] "conduct amounting to a breach of contract becomes tortious only when it also violates a duty independent of the contract arising from principles of tort law." *Butler-Rupp v. Lourdeaux*, 36 Cal. Rptr. 3d 685, 690 (Ct. App. 2005) (quoting *Erlich v. Menezes*, 87 Cal. Rptr. 2d 886, 891 (1999)). Under this standard,

> tort damages have been permitted in contract cases where a breach of duty directly causes physical injury . . . ; for breach of the covenant of good faith and fair dealing in insurance contracts . . . ; for wrongful discharge in violation of fundamental public policy . . . ; or where the contract was fraudulently induced.

*Id.* (quoting *Erlich*, 87 Cal. Rptr. 2d at 891).

Here, although Defendants claim that Plaintiff violated a duty independent of the Billing Agreements, Defendants' negligence counterclaim does not allege an independent duty. (*See* Countercl. ¶¶ 27-30.) Defendants' negligence claim merely alleges the following in its entirety:

> 27. Counterclaimants repeat and re-allege the allegations contained in Paragraphs 1-23 as if same were set forth at length herein.
>
> 28. [Plaintiff] owed a duty to the Counterclaimants to perform its financial and professional obligations related to the Agreements.

---

[5] The parties again agree that California law applies to the negligence counterclaim. Plaintiff exclusively cites California law in its moving brief. (Pl.'s Moving Br. 6-7.) Defendants similarly rely on California tort law, and cite a New Jersey regulation merely as evidence of Plaintiff's fiduciary duty. (Defs.' Opp'n Br. 20-21.)

8

> 29. [Plaintiff] breached those obligations (duties) by failing to fulfill its promises in the Agreements.
>
> 30. As a proximate result of said breach, Counterclaimants were significantly damaged and will continue to be damaged.

(*Id.*) Defendants exclusively allege duties arising from the Billing Agreements, and therefore fail to state a negligence claim.

Additionally, although Defendants attempt to manufacture an independent duty in their brief by alleging Plaintiff's violation of New Jersey regulations, Defendants fail to cite to, and the Court is unaware of, any authority providing Defendants a private right of action under the cited regulations. (Defs.' Opp'n Br. 20-21.) The Court therefore grants Plaintiff's Motion to Dismiss as to Count Two of Defendants' Counterclaims.

## V. Conclusion

For the reasons set forth above, Plaintiff's Motion to Dismiss is DENIED as to Counts One, Three, and Four of Defendants' Counterclaims, and Plaintiff's Motion to Dismiss is GRANTED as to Count Two of Defendants' Counterclaims. An order consistent with this Memorandum Opinion will be entered.

/s/ Michael A. Shipp

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

Dated: October 28th, 2016